# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>        Plaintiff,<br><br>    v.<br><br>HYDRAULICS INTERNATIONAL, INC., a California corporation, and THE GHAEMMAGHAMI FAMILY LIMITED PARTNERSHIP,<br><br>        Defendants. | Case No.: 2:25-cv-08988-HDV-SK<br><br>**CONSENT DECREE**<br><br><br># JS-6 |

CONSENT DECREE

# <u>CONSENT DECREE</u>

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendants the Ghaemmaghami Family Limited Partnership and Hydraulics International, Inc. (collectively, "Defendants") are respectively the owner and the operator of the three facilities located at 9201, 9225, 9233, 9241, 9255, 9257, and 9261 Independence Avenue, Chatsworth, CA (collectively, the "Independence Facility"); 20961 and 20963 Knapp Street, Chatsworth, CA (the "Knapp Facility"); and 9000 Mason Avenue, Chatsworth, CA (the "Mason Facility") (together, the "Facilities"), under Waste Discharger Identification numbers lists the current WDID number for the Facilities as follows: 1) 4 19I031276—Independence Facility; 2) 4 19I031274—Knapp Facility; and 3) 4 19I031277—Mason Facility.

**WHEREAS**, the Facilities industrial activities consist of the manufacture of military and commercial aircraft equipment, including aircraft ground support equipment, flow meters, and hydraulic pumps for the aerospace industry. The Facilities are categorized under Standard Industrial Classification ("SIC") Codes 3728 ("Aircraft Parts and Auxiliary Equipment, not elsewhere classified") and 3594 ("Fluid Power Pumps and Motors").

**WHEREAS**, storm water discharges associated with industrial activity at the Facilities are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3)

Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facilities ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendants' operations at the Facilities result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendants, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on July 22, 2025 Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendants, their registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S.

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

2

CONSENT DECREE

Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on October 30, 2025, LA Waterkeeper filed a first amended complaint against Defendants in the Central District of California ("Court"), Civil Case No. 2:25-cv-08988-HDV-SK ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendants' discharges of pollutants into storm drains and surface waters, including Browns Canyon Wash, Limekiln Creek, Aliso Creek, the Los Angeles River, the Los Angeles River Estuary, Queensway Bay, San Pedro Bay and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Defendants deny any and all allegations in the 60-Day Notice Letter and the Complaint relating to the Facility;

**WHEREAS**, Plaintiff and Defendants (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations are taking place is located within this District.

CONSENT DECREE

3. The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. LA Waterkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies.

## I. OBJECTIVES

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facilities.

## II. AGENCY REVIEW AND DEFINITIONS

### A. AGENCY REVIEW OF CONSENT DECREE

8. Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no

objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.    Entry of Consent Decree. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.    "Advanced Treatment System" means a storm water treatment system that includes each of the following processes: 1) pre-settling; 2) polymer- or electronically assisted coagulation (i.e., particle flocculation); and (3) sand or other media filtration (e.g., perlite, activated carbon) or ion exchange.

b.    "BAT" means the Best Available Technology Economically Achievable.

c.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

CONSENT DECREE

d.  "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

e.  "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

f.  "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

g.  "Design Storm" means the design storm calculated in accordance with the design storm standards set forth in General Permit for Volume-based BMPs (General Permit § X.H.6.a.) or Flow-based BMPs (General Permit § X.H.6.b.).

h.  "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facilities.

i.  "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

j.  "Entry Date" means the day this Consent Decree is approved and entered by the Court.

k.  "Forecasted Rain Event" means a forecasted rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "[Chatsworth. Los Angeles, CA USA]."

l.  "MIP" means a Monitoring Implementation Plan.

m.  "PPT" means Pollution Prevention Team.

n.  "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

6

CONSENT DECREE

o.   "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

p.   "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

q.   "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

r.   "SWPPP" means a Storm Water Pollution Prevention Plan.

s.   "Term" means the period between the Effective Date and the "Termination Date."

t.   "Termination Date" means the latest of:

    i.   June 30 following three (3) years from the Effective Date;

    ii.   June 30 following two (2) years after an advanced treatment system is fully installed, operational, and optimized, if applicable;

    iii.   seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following three (3) years after the Effective Date; or

    iv.   seven (7) days from Defendants' completion of all payments and other affirmative duties required by this Consent Decree.

u.   "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

CONSENT DECREE

## III.  COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.    <u>Current and Additional Best Management Practices.</u> At all times, Defendants shall implement BMPs identified in their SWPPP and BMPs described herein and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree, the General Permit, and the Clean Water Act.

14.    <u>Rain Gauge/Sensor</u>. Defendants shall install and maintain an electronic rain gauge or sensor at the Facilities within ten (10) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendants shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions caused by something outside of Defendants' control.  In the event of a rain gauge malfunction, Defendants shall use rain data from National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Chatsworth, Los Angeles, CA USA" for purposes of precipitation quantities and timing.

15.    <u>Non-Structural BMPs for the Facilities</u> As soon as possible but no later than September 1, 2026, unless otherwise noted, Defendants shall develop and implement the following non-structural BMPs at the Facilities:

        a.    <u>Sweeping</u>. Implement a sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10

(10 μm) particles on all paved areas at least once per month outside of the Wet Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

b.    Store Industrial Materials Under Cover. Prior to Forecasted Rain Events, to the extent practical use tarps, weather-tight containers, or custom covers to prevent exposure to storm on industrial materials and/or machinery or store industrial materials and/or machinery under permanent roofs or Storm-Resistant Shelters, as defined by General Permit Section XVII.B.5.

c.    Cover Outdoor Bins. Ensure that all outdoor waste, scrap metal or industrial containers are outfitted with effective covers that are kept closed when not in use;

d.    Minimize Pollutant Escape.  Minimize the duration that roll-up door and loading docks remain open. Replace or repair industrial strip doors to provide thorough closure;

e.    Remove Abandoned Materials. Remove, and prevent the storage of, inutile, and/or abandoned racks, vehicles, equipment, paint and waste scrap materials from the entire property;

f.    Conduct a comprehensive storm drain system survey. Delineate drainage areas for each discharge point to accurately map industrial activities to specific drainage areas;

g.    To the extent possible establish and mark 10-foot radius exclusion zones around all storm drain inlets and use best efforts to prevent industrial traffic, storage and activities in those areas, and manually sweep those areas at least twice a week; Maintenance.

Institute an equipment and vehicle maintenance program that ensures:

    i.  no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facilities, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

    ii.  maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

    iii.  when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

h.    <u>Confirm BMPs</u>. Pursuant to the triannual reporting specified in Paragraph , Defendants shall confirm to LA Waterkeeper in writing and with photographs, that each of the above BMPs has been implemented as set forth above.

16.    <u>Wet Season BMPs</u>.

a.    <u>Wattles/ Filters/ Socks</u>.

    i.  Prior to the start of the 2026-2027 Wet Season, employ and secure wattles/ filtration socks (biochar or other equivalent media) to remove sediments, metals, and organic materials in storm water discharged from the Facility, and configure such socks to achieve maximum contact time with storm water prior to discharge;

    ii.  Prior to the start of the 2026-2027 Wet Season, install drop inlet filters at all storm drain inlets serving industrial area(s) with metal-adsorptive media (options include biochar, iron-based sorbents, and ion exchange resins, or similar

CONSENT DECREE

products) sized to accommodate flow rates for design storm events;

    iii.  Prior to the start of the Wet Season, no later than September 15th and annually after that, inspect and evaluate wattles/socks and inlet filter media for rips, tears or other visual damage. If wattles/socks or drop inlet filter media are damaged or are not sufficiently reducing pollutant concentrations, replace, employ and secure new wattles/ socks or drop inlet filter media  to remove pollutants in storm water discharged from the Facilities.

  b.  Pre-Rain Protocol.  Within twenty-four (24) hours prior to a Forecasted Rain Event, inspect all wattles/filters/socks deployed at the Facilities. Remove any exposed waste material and cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, or otherwise move them to a storm-resistant shelter; Ensure all drains are free of clogs and operating as intended.

  c.  Confirm Wet Season BMPs. Pursuant to the triannual reporting specified in Paragraph 27, Defendants shall confirm to LA Waterkeeper in writing and with photographs, that each of the Wet Season BMPs has been implemented as set forth above.

17.  Structural BMPs at the Facilities. As soon as possible, but no later than September 1, 2026, unless otherwise noted, Defendants shall develop and implement the following structural BMPs at the Facilities:

  a.  Patch, pave, or otherwise resurface areas of degraded pavement or asphalt in areas of primary stormwater conveyance and within twenty-five feet to all discharge points at the Facilities;

11

CONSENT DECREE

b.  Install diversion measures to channel storm water to Discharge Points identified in the Facility SWPPPs and prevent storm water discharges from any point other identified Discharge Points;

c.  Paint, coat or replace all sufficiently degraded galvanized roof surfaces from which storm water flows into any drainage area;

d.  At the Mason Facility, to the extent feasible, machining equipment shall be placed indoors or under storm resistant cover (as defined by General Permit Section XVII.B.5.) to prevent contact with precipitation;

e.  Prior to a forecasted rain event, install at least three treatment wattles/socks (biochar or other equivalent media) horizontally in the swale at the Knapp Facility to slow and filter storm water discharge prior to discharge;

f.  Pursuant to the triannual reporting specified in Paragraph 27, Defendants shall confirm to LA Waterkeeper in writing and with photographs, that each of the above Structural BMPs has been implemented as set forth above.

**B.    SAMPLING AT THE FACILITIES**

18.    During the Term, Defendants shall collect samples of storm water discharge from each Discharge Point at the Facilities from at least four (4) Qualifying Storm Events, including the first two (2) Qualifying Storm Events during the first half of the Reporting Year and the first two (2) Qualifying Storm Events during the second half of the Reporting Year. If, due to lack of Qualifying Storm Events, fewer than two Qualifying Storm Events are collected in the first half of a Reporting Year, that shall be compensated for by collecting an additional sample from an additional Qualifying Storm Event during the second half of a Reporting Year, until a total of four samples is collected for any Reporting Year occurring during the term of this Agreement.

CONSENT DECREE

19.     Timing. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5.

20.     Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendants intend to conduct sampling for any additional parameter(s) for any reason, such parameter(s) shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendants shall notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters pursuant to the Triannual Reporting requirements as outlined in Paragraph 27 below, and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

21.     Laboratory and Holding Time. Except for pH samples, Defendants shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

22.     Detection Limit. Defendants shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

23.     Reporting. Defendants shall provide complete laboratory results of all samples collected at the Facilities to SMARTS in accordance with the General Permit and concurrently notify LA Waterkeeper that the results have been uploaded to and certified on SMARTS.

24.     Documentation of Inability to Sample. If a Forecasted Rain Event results in significant rainfall during regular operating hours, but Defendants is unable to sample because insufficient discharge occurs, Defendants shall document the inability to sample by taking photographs during that observation time at each Discharge Point.  Defendants shall maintain those photographs along with the rain/ gauge sensor

13

CONSENT DECREE

data and produce them subject to the triannual reporting requirements outlined in Paragraph 27 below.

### C.    REDUCTION OF POLLUTANTS IN DISCHARGES

26.    <u>Table 1 Numeric Limits</u>. Defendants shall develop and implement BMPs for storm water discharges from the Facilities that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1[2]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous); 100 mg/L (annual) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous); 15 mg/L (annual) | NAL |
| Zinc | 0.159 mg/L | NEL |
| Aluminum | 0.75 mg/L | NAL |
| Copper | 0.0332 mg/L 0.06749 mg/L | NAL NEL |
| Lead | 0.262 mg/L | NAL |
| Iron | 1 mg/L | NAL |
| Nitrate + Nitrite Nitrogen (N+N) | 0.68 mg/L | NAL |
| pH | 6.5-8.5 SU (instantaneous) | Basin Plan |

26.    <u>Table 1 Exceedances</u>. An "Exceedance" of Table 1 is defined as follows: (a) where the concentration of the same pollutant in any two (2) storm water samples from the same discharge point at one of the Facilities during a Reporting Year exceeds the annual numeric limit ("NAL") contained in Table 1; and/or (b) where the concentration of any pollutant in any one (1) storm water sample from one of the

---

[2] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for TSS is either increased to 110 mg/L or decreased to 90 mg/L, such new NAL, and not 100 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for TSS being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

14

CONSENT DECREE

Facilities exceeds an instantaneous numeric limit or a Numeric Effluent Limitation ("NEL") contained in Table 1.

27. Triannual Reports. By July 31, 2026, Defendants shall prepare a report to send to Plaintiff detailing progress on the implementation of the BMPs at the Facilities detailed in Paragraph 15. For the remainder of the Term of this Consent Decree, on October 31, January 31, and April 30, Defendants shall send a written triannual report to LA Waterkeeper. This report shall document:

a. All BMPs implemented pursuant to this Consent Decree, with representative photographs, demonstrating that each BMP has been implemented as set forth above.

b. Defendants' ability or inability to sample a rain event that is documented at >.1 inch during operating hours;

c. The laboratory results of all stormwater samples collected at the Facilities, with an identification of all results that are above the threshold limits in Table 1.

d. Whether Defendants intend to conduct sampling for additional parameters.[3]

e. Pursuant to the triannual reporting specified in Paragraph 27, on October 31, Defendants shall confirm to LA Waterkeeper in writing and with photographs, that each of the Wet Season BMPs has been implemented as set forth above.

28. Action Plan. As of the Effective Date, and for the remainder of the Term, if (a) Defendants have an unauthorized non-storm water discharge in violation of Paragraph 12, or (b) storm water sample results demonstrate an Exceedance as defined above; or (c) after an advanced treatment system is fully installed,

---

[3] In such instance, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 and the Parties shall meet and confer regarding the applicable Table 1 limit within thirty (30) days of such notification.

CONSENT DECREE

operational, and optimized, if ever, the advanced treatment system discharges untreated storm water in smaller than a Design Storm (each, a "Trigger Event"), Defendants shall prepare and submit to LA Waterkeeper a plan to address the conditions causing the Trigger event ("Action Plan"). The Action Plan shall be submitted to LA Waterkeeper concurrently with the next Triannual Report, provided there is at least  thirty (30) days between  the applicable Trigger Event and the due date of that report; otherwise, the Action Plan shall be submitted within thirty (30) days of the Trigger Event.  An Action Plan shall address all facilities that have a Trigger Event in the applicable time frame. No more than two (2) Action Plans will be required in any  reporting year,  limited to one (1) in the first half of the reporting year  and one (1) in the second half of the reporting year.  <u>Requirements</u>. Each Action Plan shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s), the applicable discharge in smaller than a Design Storm, and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the cause of each Trigger Event; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), the Design Storm requirement, and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendants shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

16

CONSENT DECREE

a.     Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facilities' storm water discharges:

i.     Hydrologic Controls. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii.     Sweeping. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii.     Downspout Filters. Install downspout filters effective at treating zinc and copper on each of the Facilities' downspouts;

iv.     Install MERV 13-16 filters (or HEPA filters) on all ventilation exhausts serving indoor machining areas at the Facilities and replace filters per manufacturer's specifications;

v.     Treatment Systems. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

vi.     Evaluation of Existing BMPs.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

CONSENT DECREE

    b.     <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete Action Plan to provide Defendants with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendants shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

    c.     Defendants shall revise the then-current SWPPP for the subject Facility to reflect the changes required by the Action Plan for the Facility, as set forth in Paragraph 33 below.

**D.**    **V<span style="font-variant:small-caps">ISUAL</span> O<span style="font-variant:small-caps">BSERVATIONS</span>**

29.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct visual observations during the Facilities' operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

30.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct monthly visual observations of the Facilities including outfalls, Discharge Points(s), outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. All Discharge Points shall also be inspected for

accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facilities. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facilities to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facilities. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facilities.

31.     Visual Observations Records. Defendants shall maintain observation records, including photographs, to document compliance with Paragraphs 29 and 30. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing.  Defendants shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

E.     **TRAINING AND PLANS**

32.     Employee Training Program. Within thirty (30) days of the Effective Date, Defendants shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facilities designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

CONSENT DECREE

**a.** <u>Materials</u>. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendants' personnel to ensure effective implementation of all BMPs at the Facilities;

**b.** <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendants shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

**c.** <u>Training Frequency</u>. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facilities' SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

**d.** <u>Sampling Training</u>. Defendants shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

**e.** <u>Visual Observation Training</u>. Defendants shall provide training on how and when to properly conduct visual observations to Designated Employees;

CONSENT DECREE

    **f.**    <u>Non-Storm Water Discharge Training</u>. Defendants shall train all Designated Employees at the Facilities on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

    **g.**    <u>Employees</u>. All Designated Employees at the Facilities shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

    **h.**    <u>Records</u>. Defendants shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

33.    <u>SWPPP Revisions</u>.

    a.    <u>Initial SWPPP Revisions</u>. Defendants shall amend the Facilities' SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

        <u>i</u>.    A revised pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facilities' storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

CONSENT DECREE

    ii.     A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facilities as required by Section X.G of the General Permit;

    iii.    Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

    iv.    A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows;

    v.    A MIP as required by Sections XI and X.I of the General Permit;

    vi.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

    vii.    A Training Program as described above in Paragraph 32.

    b.    <u>Additional SWPPP Revisions.</u>

    i.    Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendants shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

    ii.    Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to

CONSENT DECREE

Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facilities contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendants shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c. <u>Review of SWPPP</u>.  For any SWPPP updates pursuant to this Paragraph, LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete SWPPP to provide Defendants with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendants shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendants shall upload the revised SWPPP to SMARTS.

**F.    COMPLIANCE MONITORING AND REPORTING**

34.    LA Waterkeeper may conduct one annual site inspection at each Facility on the same calendar day ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendants' compliance with this

Consent Decree, and provided good cause exists such that a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendants shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendants with at least twenty-four (24) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facilities in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 64. During the Wet Weather inspection, Plaintiff may request that Defendants collect a sample of industrial storm water discharge from the Facilities' designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendants shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendants' representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

35. Document Provision. During the Term, Defendants shall notify and submit documents to LA Waterkeeper as follows:

a. Defendants shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 64, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facilities that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

24

CONSENT DECREE

b.    Within seven (7) business days of receipt by Defendants, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 64, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facilities received by Defendants from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

36.    Compliance Monitoring. Defendants shall partially defray costs associated with Plaintiff's monitoring of Defendants' compliance with this Consent Decree during the Term by paying Fifteen Thousand Dollars ($15,000.00) in three annual installments, with the first payment within thirty (30) days of the Entry Date, and the second and third payments on the anniversary of the Entry Date in the subsequent two years. Payments pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via Electronic Funds Transfer or by certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Please include the Facilities' names and WDIDs on the payment. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**G.    ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, AND MISSED DEADLINES**

37.    Environmentally Beneficial Project. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in Los Angeles River Watershed, Defendants shall make a payments totaling Twenty Thousand Dollars ($20,000.00)[4] to the to the Rose Foundation, with the first payment of Ten Thousand Dollars ($10,000.00) made within thirty (30) days of the Entry Date and a second payment of Ten Thousand

---

[4] The NOI for each of the Facilities was issued by the Regional Board, establishing coverage under the Permit on September 25, 2025.

25

CONSENT DECREE

Dollars ($10,000.00) made within ninety (90) days of the Entry Date. The payments shall be made payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

38.    LA Waterkeeper's Fees and Costs. Defendants shall pay a total of One Hundred Twenty-Five Thousand Dollars ($125,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter, with the first payment of Sixty-Two Thousand Five Hundred Dollars ($62,500.00) made within thirty (30) days of the Entry Date, and a second payment of Sixty-Two Thousand Five Hundred Dollars ($62,500.00) made within ninety (90) days of the Entry Date. The payments shall be made payable to: Aqua Terra Aeris Law Group and delivered by overnight carrier (no signature required) to 8 Rio Vista Ave., Oakland, CA 94611. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

39.    Missed Deadlines. "In the event that Defendants fail to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, LA Waterkeeper shall provide written notice to Defendants of such missed deadline.  Defendants shall have seven (7) calendar days from receipt of such notice to cure such delinquency.  If Defendants fail to cure such delinquency within seven (7) calendar days of receipt of LA Waterkeeper's notice, then Defendants shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to: the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendants agree to make the stipulated payment

within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

## IV.    DISPUTE RESOLUTION

40.    <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

41.    <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 41, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

42.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

43.    <u>Plaintiff's Waiver and Release of Defendants</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, managers, employees, members, parents, subsidiaries, divisions,  successors or assigns, attorneys and other representatives, release Defendants, their officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised or could have been raised

in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

44.    Defendants' Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of its officers, directors, managers, employees, attorneys, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

45.    Waiver of California Civil Code § 1542. Upon the Effective Date of this Agreement, the Parties further expressly waive any rights or benefits available to them under the provisions of California Civil Code § 1542. The Parties acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

While a Party may assert that California Civil Code section 1542 applies to general releases only, and that the releases herein are limited releases, the Parties hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the Notice Letter and/or the Complaint, up to and including the Termination Date of this Agreement.

CONSENT DECREE

46.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendants' compliance at the Facilities with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

**VI.     MISCELLANEOUS PROVISIONS**

47.     No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

48.     Attorneys' Fees. Other than the payment to Plaintiffs under Paragraph 38, each Party shall bear its own past attorneys' fees and costs relating to this action unless a Party seeks fees and costs pursuant to Paragraph 42.

49.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

50.     Authority. The undersigned representatives for Plaintiff and Defendants each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

51.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and

paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

52. Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

53. Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

54. Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

55. Choice of Law. The laws of the United States shall govern this Consent Decree.

56. Diligence. Defendants shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

57. Effect of Consent Decree. Compliance with this Consent Decree does not mean that Defendants are complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

58. Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

59. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any

30

CONSENT DECREE

deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

60.   Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendants shall notify Plaintiff within ten (10) days of any assignment.

61.   Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

62.   Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendants: |
|---|---|
| Los Angeles Waterkeeper | Hydraulics International, Inc. |
| Benjamin Harris | Bahman Seifollahi, President/CEO |
| Erina Kwon | 20961 Knapp St. |
| Alexandra Ballesteros | Chatsworth, CA 91311 |
| 360 E 2nd St., Suite 250 | bahmans@hiinet.com |
| Los Angeles, CA 90012 | (818) 998-1231/Ext. 2221 |
| Email: ben@lawaterkeeper.org | |
| Email: erina@lawaterkeeper.org | |
| Email: alex@lawaterkeeper.org | |
| Phone: (310) 394-6162 | |
| | |
| With copies to: | With copies to: |
| Anthony M. Barnes | Santino Tropea |
| amb@atalawgroup.com | stropea@tropeamcmillan.com |
| 8 Rio Vista Ave. | 4747 Morena Blvd., Suite 250A |
| Oakland, CA 94611 | San Diego, CA 92117 |
| (917) 371-8293 | (858) 703-8103 |
| | |
| Andrew L. Packard | W. Lee Smith |
| Andrew@PackardLawOffices.com | lsmith@michellawyers.com |
| 245 Kentucky Street, Suite B3 | 180 East Ocean Blvd., Ste. 200 |
| Petaluma CA 94952 | Long Beach, CA 90802 |
| (707)782-4060 | (562) 216-4444 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

63.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable

to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____, 2026          By: _____
                                          Bruce Reznik
                                          Executive Director
                                          Los Angeles Waterkeeper


Dated: _____, 2026          By: _____
                                          Bahman Siefollahi
                                          President/CEO
                                          Hydraulics International, Inc.

Dated: _____, 2026          By: _____
                                          Randy Ghaemmaghami
                                          Trustee
                                          The Ghaemmaghami Family
                                          Limited Partnership

33

CONSENT DECREE

APPROVED AS TO FORM

AQUA TERRA AERIS LAW GROUP

Dated: _____, 2026          By: _____
                                          Anthony M. Barnes
                                          Attorney for Plaintiff
                                          Los Angeles Waterkeeper

TROPEA MCMILLAN

Dated: _____, 2026          By: _____
                                          Santino M. Tropea
                                          Attorney for Defendant
                                          Hydraulics International, Inc.

MICHEL & ASSOCIATES, P.C.

Dated: _____, 2026          By: _____
                                          W. Lee Smith
                                          Attorney for Defendant
                                          The Ghaemmaghami Family
                                          Limited Partnership

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendants.

Dated: June 11, 2026                    CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE HERNÁN D. VERA
United States District Court Judge